UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN

JANA HINES,

        Plaintiff,

v.

FCA US LLC,

        Defendant.

Case No.
Hon.

---

Amanda M. Ghannam (P83065)
Schulz Ghannam PLLC
645 Griswold St., Ste. 4100
Detroit, MI 48226
(313) 788-7446
amanda@michiganworkerlaw.com
Attorneys for Plaintiff

---

**PLAINTIFF'S COMPLAINT AND JURY DEMAND**

Plaintiff, Jana Hines, through counsel, Amanda M. Ghannam of Schulz Ghannam PLLC, brings this employment discrimination action against Defendant, FCA US LLC ("FCA") as follows:

**INTRODUCTION**

This employment discrimination and retaliation case arises out of the wrongful termination of Plaintiff Jana Hines from Defendant FCA US, LLC. After over 21 years of loyal service to the company, Ms. Hines was terminated after

Defendant accused her of alleged timecard fraud – but it knew that Ms. Hines' much younger, non-female, non-Black supervisor was aware of the overtime hours she had worked and had personally approved them. Meanwhile, others outside of Ms. Hines' protected class actually did engage in timecard fraud and other related violations but were not disciplined or terminated. Defendant manufactured the allegation as a pretext to terminate Ms. Hines' employment. Ms. Hines brings suit alleging discrimination and retaliation in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. §1981, the Age Discrimination in Employment Act, and Michigan's Elliott-Larsen Civil Rights Act.

## PARTIES, JURISDICTION, AND VENUE

1. Plaintiff, Jana Hines, is a Black/African-American woman and a former employee of Defendant FCA US LLC.

2. Defendant, FCA US LLC, is a foreign limited liability company operating in the Eastern District of Michigan to design, manufacture, and distribute cars and trucks.

3. This Court has federal question jurisdiction pursuant to 42 U.S.C. §1981, Title VII of the Civil Rights Act of 1964, and the Age Discrimination in Employment Act.

4. Supplemental jurisdiction over Plaintiff's state law claims is proper pursuant to 28 U.S.C. §1367 as they arise from the same case and controversy.

5. Venue in this Court is proper pursuant to 28 U.S.C. §1391 as a substantial part of the events and omissions giving rise to this Complaint occurred in Warren, Michigan, within this judicial district.

6. Plaintiff filed a Charge of Discrimination with the Equal Employment Opportunity Commission against Defendant, received notice of right to sue, and timely files this Complaint within 90 days of receipt of such notice.

## FACTUAL ALLEGATIONS

7. Plaintiff, Jana Hines, began her employment with FCA US LLC in a union-side position at Defendant's Warren Truck Assembly Plant in April 2002.

8. After approximately six years, Ms. Hines transferred to the "paint shop" and moved into a leadership position.

9. Ms. Hines had observed corruption, favoritism, and unfairness in interactions between management, union leadership, and workers.

10. She was determined to help her fellow workers by working her way up to a management position where she could lead with integrity.

11. Ms. Hines earned a master's degree to further her mission.

12. After Ms. Hines obtained her master's degree, she was promoted to a supervisor position and was subsequently transferred to the Sterling Heights Assembly Plant.

13. At the Sterling Heights plant, Ms. Hines continued to observe and experience mistreatment by colleagues in supervisory positions, but she was undeterred in her mission to advance her education and leadership.

14. She trained herself on a variety of jobs and could perform just about any work that was required in the plant, including the job duties of her own supervisors when they were absent.

15. In October of 2021, Ms. Hines earned another promotion to a Business Unit Leader ("BUL") position at the Warren Truck Assembly Plant.

16. Ms. Hines was responsible for supervising the third shift in the shops that produced Ram trucks and Jeep Wagoneer vehicles.

17. As one of very few Black/African-American female managers, Ms. Hines received fewer resources than other managers.

18. For example, the plant did not properly staff the third shift with supervisors and maintenance workers, so Ms. Hines frequently had to stay on the shop floor to ensure that those job duties were completed.

19. When Business Unit Leaders received notification of problems with machines, Ms. Hines was the only BUL who was required to come in early and stay late.

20. Ms. Hines was often excluded from management meetings.

21. She was not given an office or desk.

22. Defendant paid male employees without comparable education and experience more than Ms. Hines.

23. During this time, Ms. Hines began reporting to a new supervisor, Mr. Jose Rivera.

24. On information and belief, Mr. Rivera was approximately 20 years younger than Ms. Hines; he is also male and non-Black/African-American.

25. Sensing that she was being treated differently, in approximately August of 2022, Ms. Hines made a complaint of discrimination to Defendant's Human Resources office.

26. Ms. Hines spoke to Defendant's EEO (Equal Employment Opportunity) office in approximately September of 2022.

27. She reported, among the other issues listed above, that White/Caucasian BULs were being permitted to poach the supervisors she had trained for their own shifts; that she was not being provided with sufficient staff or materials, such as uniforms, to ensure the shifts would run smoothly; and that she was not getting adequate support from the workers she supervised, who would often fall asleep on the job and fail to respond to radio calls.

28. After Ms. Hines submitted these complaints, Defendant transferred her to first shift in the Trim department at the Warren Truck Assembly Plant.

29. In the Trim department, Ms. Hines was responsible for overseeing approximately 700 workers – a marked increase from the 300 she had been responsible for previously.

30. Ms. Hines felt that she had been sent to Trim, and her workload nearly doubled, in retaliation for her complaints.

31. Despite the increase, she continued to perform her job duties excellently, receiving positive reviews and earning the respect of her colleagues and subordinates alike.

32. Defendant eventually transferred Ms. Hines back to the third shift paint shop position at the Warren Truck Assembly Plant.

33. When she returned, Ms. Hines found that all the supervisors she had trained had been moved to another BUL's shift, and none of the supervisors on her shift had been properly trained.

34. Despite the difficulties she faced, Ms. Hines was an excellent leader. She increased attendance by 40%, ensured that leaders and supervisors had regular meetings to communicate about any issues that arose, and took charge to cover other employees' job duties when they slacked off.

35. Ms. Hines treated her workers, her supervisors, and herself with respect and always maintained the highest possible performance rating.

36. In the summer of 2023, Ms. Hines and the other managers at the plant attended a meeting with Human Resources in which they were given new information regarding overtime work.

37. They were told that BULs could earn overtime pay for any hours worked over 45 per week, and if one of the three BULs was on vacation, then the other two would split three shifts among themselves, working twelve-hour shifts and coming in early to share information about the prior shift worked.

38. Accordingly, Ms. Hines worked as needed throughout August, September, and October of 2023, including many twelve-hour shifts and many double shifts due to the absence of other managers.

39. She would come in an hour early and stay an hour past her scheduled time to ensure that there was adequate communication between shifts.

40. Because of a broken turnstile gate at the Warren plant, Ms. Hines and the other employees were unable to clock in and out normally.

41. Their time records, or "gate rings", were incorrect due to the broken turnstile gate.

42. Ms. Hines recorded her hours manually, as well as those of the employees that she supervised.

43. Because of the broken turnstile gate, Ms. Hines was required to spend a significant amount of time ensuring that hourly employees' time was recorded and they were paid correctly.

44. On a daily basis, Ms. Hines had to check in with the union, Human Resources, and the workers she supervised to correct their hours and ensure they were paid for the hours they had worked because their gate rings had not been recorded correctly.

45. Ms. Hines had to trust that her direct reports were being honest with her about their arrival and departure times and manually correct their hours according to what they told her.

46. Mr. Rivera was aware that the broken turnstile gate was causing employees' gate ring records to be submitted incorrectly.

47. Ms. Hines' hours, and those of other employees, could not be submitted unless Mr. Rivera approved and signed off on them.

48. During this time, while another BUL was on vacation, Ms. Hines and the other BUL were required to work their own shift, come in an hour early and stay an hour late to share and receive information about the prior and subsequent shifts, and split the remaining shift among themselves.

49. As a result, Ms. Hines worked extremely long hours.

50. At the end of November 2023, Ms. Hines was summoned to a meeting with Mr. Rivera and a Human Resources employee named Marty.

51. Marty told Ms. Hines that they "had an issue" because Ms. Hines was "stealing time."

52. Ms. Hines was bewildered and had no idea what Marty was talking about.

53. Marty accused Ms. Hines of submitting hours that she had not in fact worked and said that she "owed" Defendant an hour back per day.

54. Ms. Hines informed Marty that she had in fact worked the hours that she had submitted, but if there had been some error with the timekeeping, the company could correct the difference.

55. When Marty told Ms. Hines that Human Resources was going to investigate her, Ms. Hines asked Marty why only she was being investigated and not Mr. Rivera, who was aware of when Ms. Hines worked and had signed off on all of her hours.

56. Defendant could not provide an answer.

57. Although Ms. Hines had her hours manually recorded in a binder located on her desk, Defendant did not permit her to retrieve it.

58. Defendant gave Ms. Hines no other opportunity to prove that she had in fact worked the hours she recorded and was paid for.

59. Defendant did not give Ms. Hines any additional information about the "investigation" into her time.

60. Defendant terminated Ms. Hines' employment on December 16, 2023.

61. On information and belief, Defendant repaired the broken turnstile gate about a month after Ms. Hines' termination.

62. Mr. Rivera, on information and belief, was not disciplined or terminated regarding the alleged "time-stealing" issue even though he knew that Ms. Hines had worked every hour she submitted and had approved her hours himself.

63. Ms. Hines is aware of multiple other employees who are not female/Black/African-American who have submitted hours and been paid for time they were not present at work or otherwise manipulated their time and pay and were not disciplined or terminated, and/or were otherwise treated more favorably than Ms. Hines.

64. For example, on information and belief, one White/Caucasian male supervisor named Tom had submitted hours that he did not work and submitted, and received, vacation pay on top of his regular pay.

65. On information and belief, another White/Caucasian male employee named Larry also participated in this practice, on the advice of Tom.

66. On information and belief, another White/Caucasian male employee named Paul submitted, and received pay for, two hours per shift that Defendant told Ms. Hines she could not get paid for.

## COUNT I
## DISCRIMINATION IN VIOLATION OF
## THE ELLIOTT-LARSEN CIVIL RIGHTS ACT
## M.C.L. §37.2201 *ET SEQ.*

1. Plaintiff incorporates the foregoing paragraphs as if fully restated herein.

2. At all relevant times, Defendant was an employer and Plaintiff was an employee covered by and within the meaning of the Elliott-Larsen Civil Rights Act, M.C.L. §37.2101.

3. Plaintiff is a member of protected groups because of her race (Black/African-American), age (53 at the time of the events giving rise to this lawsuit), and gender (female).

4. Defendant subjected Plaintiff to adverse employment actions, up to and including termination of her employment.

5. Defendant's actions were motivated by unlawful discrimination against Plaintiff because of her race, age, and gender, in violation of M.C.L. §37.2202(1)(a).

6. But for Plaintiff's race, age, and gender, Defendant would not have subjected her to such adverse actions.

## COUNT II

## RETALIATION IN VIOLATION OF THE ELLIOTT-LARSEN CIVIL RIGHTS ACT
## M.C.L. §37.2701(a) *ET SEQ.*

7. Plaintiff incorporates the foregoing paragraphs as if fully restated herein.

8. At all relevant times, Defendant was an employer and Plaintiff was an employee covered by and within the meaning of the Elliott-Larsen Civil Rights Act.

9. Plaintiff engaged in protected activity under the Elliott-Larsen Civil Rights Act by her conduct described herein.

10. Defendant subjected Plaintiff to adverse employment actions up to and including the termination of her employment.

11. Defendant's actions were motivated by unlawful retaliation against Plaintiff due to her protected activity.

12. But for Plaintiff's protected activity, Defendant would not have subjected Plaintiff to such adverse actions.

## COUNT III
## DISCRIMINATION IN VIOLATION OF TITLE VII OF THE CIVIL RIGHTS ACT OF 1964
## 42 U.S.C. §2000e-2(a) *et seq.*

13. Plaintiff incorporates the foregoing paragraphs as if fully restated herein.

14. At all relevant times, Defendant was an employer with greater than 15 employees and Plaintiff was an employee covered by and within the meaning of Title VII of the Civil Rights Act of 1964, 42 U.S.C. §2000e(b).

15. Plaintiff is a member of protected classes under Title VII due to her race (Black/African-American) and gender (female).

16. Defendant discriminated against Plaintiff because of her race, national origin, and gender in the terms and conditions of her employment in violation of 42 U.S.C. §2000e-2(a)(1).

17. Defendant subjected Plaintiff to adverse employment actions, up to and including termination of Plaintiff's employment as described herein.

18. But for Plaintiff's race and gender, Defendant would not have subjected Plaintiff to such adverse employment actions.

19. Defendant's actions were motivated by unlawful discrimination against Plaintiff because of her race and gender, even though other factors may have motivated their actions, in violation of 42 U.S.C. §2000e-2(m).

20. Defendant's course of conduct was done with reckless disregard for Plaintiff's federally protected civil rights, entitling Plaintiff to punitive damages.

## COUNT IV
## RETALIATION IN VIOLATION OF
## TITLE VII OF THE CIVIL RIGHTS ACT OF 1964
## 42 U.S.C. §2000e-3(a)

21. Plaintiff incorporates the foregoing paragraphs as if fully set forth herein.

22. At all relevant times, Defendant was an employer with greater than 15 employees and Plaintiff was an employee covered by and within the meaning of Title VII of the Civil Rights Act of 1964, 42 U.S.C. 2000e(b).

23. Plaintiff engaged in activity protected by Title VII including but not limited to her conduct as described herein.

24. Defendant subjected Plaintiff to adverse employment actions up to and including termination of her employment.

25. Defendant's actions were motivated by unlawful retaliation towards Plaintiff because of her protected activity in violation of 42 U.S.C. §2000e-3(a).

26. But for Plaintiff's protected activity, Defendant would not have subjected Plaintiff to such adverse actions.

27. Defendant's course of conduct was done with reckless disregard for Plaintiff's federally protected civil rights, entitling Plaintiff to punitive damages.

## COUNT V
## RACIAL DISCRIMINATION IN CONTRACTING
## 42 U.S.C. §1981

28. Plaintiff incorporates the foregoing paragraphs as if fully restated herein.

29. By the conduct described above, Defendants intentionally deprived Plaintiff, who is Black/African-American, of the same rights as are enjoyed by white citizens to the creation, performance, enjoyment, and all benefits and privileges of their contractual employment relationship with Defendants in violation of 42 U.S.C. §1981.

30. Defendants' course of conduct was done with reckless disregard for Plaintiff's federally protected civil rights, entitling Plaintiff to unlimited punitive damages.

## COUNT VI
## RETALIATION IN VIOLATION OF 42 U.S.C. §1981

31. Plaintiff incorporates the foregoing paragraphs as if fully restated herein.

32. By the conduct described herein, Defendants intentionally retaliated against Plaintiff for her opposition to Defendants' conduct which violated her right to the creation, performance, enjoyment, and all benefits and privileges of a contractual employment relationship with Defendants, regardless of her race, in violation of 42 U.S.C. §1981. *See CBOCS W., Inc. v. Humphries*, 553 U.S. 442, 128 S. Ct. 1951, 170 L. Ed. 2d 864 (2008).

33. Defendants' conduct was done with reckless disregard for Plaintiff's federally protected civil rights, entitling Plaintiff to punitive damages.

## COUNT VII

**VIOLATIONS OF THE AGE DISCRIMINATION IN EMPLOYMENT ACT**
**29 U.S.C. §621 *et seq.***

34. Plaintiff incorporates the foregoing paragraphs as if fully restated herein.

35. At all relevant times, Defendant was an employer with more than 20 employees and Plaintiff was an employee covered by and within the meaning of the Age Discrimination in Employment Act, 29 U.S.C. §621 *et seq.*

36. Plaintiff is a member of a protected class due to her age (53 years old at the time of her termination).

37. Defendant subjected Plaintiff to adverse employment actions, up to and including termination, because of her age.

38. But for Plaintiff's age, Defendant would not have subjected Plaintiff to such adverse employment actions.

39. Defendant's actions were motivated by unlawful discrimination against Plaintiff because of her age.

40. Defendant's actions were taken willfully, intentionally, and with reckless disregard for Plaintiff's federally protected civil rights, entitling Plaintiff to liquidated damages.

**COUNT VIII**
**RETALIATION IN VIOLATION OF THE AGE DISCRIMINATION**
**IN EMPLOYMENT ACT**
**29 U.S.C. §623(d)**

41. Plaintiff incorporates the foregoing paragraphs as if fully restated herein.

42. At all relevant times, Defendant was an employer with more than 20 employees and Plaintiff was an employee covered by and within the meaning of the Age Discrimination in Employment Act, 29 U.S.C. §621 *et seq.*

43. Plaintiff engaged in activity protected by the ADEA by, e.g., opposing employment practices made unlawful by the ADEA.

44. Defendant subjected Plaintiff to adverse actions up to and including termination.

45. But for Plaintiff's protected activity, Defendant would not have subjected Plaintiff to such adverse actions.

46. Defendant's actions were motivated by unlawful retaliation against Plaintiff because of her protected activity.

47. Defendant's actions were taken willfully, intentionally, and with reckless disregard for Plaintiff's federally protected civil rights, entitling Plaintiff to liquidated damages.

**DAMAGES**

1. As a direct and proximate result of Defendant's actions, Plaintiff has been placed in financial distress and has suffered a loss of earnings and benefits and

impairment of her earning capacity and ability to work, and will so suffer in the future.

2. As a direct and proximate result of Defendant's actions, Plaintiff has suffered emotional and physical distress, mental and physical anguish, loss of reputation, humiliation, and embarrassment, and will so suffer in the future.

## JURY DEMAND

Plaintiff hereby demands a trial by jury on all issues so triable.

## RELIEF REQUESTED

Wherefore, Plaintiff prays that this Honorable Court grant the following relief:

    a. Declare that the aforementioned practices and actions of Defendant constitute unlawful employment practices in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. §1981, the Age Discrimination in Employment Act, and the Elliott Larsen Civil Rights Act;

    b. Award Plaintiff all lost wages, past and future, to which she is entitled;

    c. Award Plaintiff compensatory damages;

    d. Award Plaintiff punitive damages;

  f. Award Plaintiff reasonable attorney's fees, costs, and interest; and

  g. Award such other relief as this Court deems just and proper.

Wherefore, Plaintiff respectfully requests that this Court enter judgment against Defendant and all relief requested in this Complaint.

  Respectfully submitted,

  Schulz Ghannam P.L.L.C.

  By: */s/ Amanda M. Ghannam*

  Amanda M. Ghannam (P83065)
  Schulz Ghannam PLLC
  Attorneys for Plaintiff
  645 Griswold St. Suite 4100
  Detroit, MI 48226
  (313) 788-7446
  amanda@michiganworkerlaw.com

Dated: October 10, 2025